## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THERESA MAY COBOURN, | CASE NO. 1:14-cv-01292-GBC |
| Plaintiff, | (MAGISTRATE JUDGE COHN) |
| v. | |
| CAROLYN W. COLVIN, COMMISSIONER OF SOCIAL SECURITY, | MEMORANDUM |
| Defendant. | Docs. 1, 5, 6, 7, 8 |

## MEMORANDUM

### I.      Introduction

The above-captioned action is one seeking review of a decision of the Commissioner of Social Security ("Commissioner") denying the application of Plaintiff Theresa May Cobourn ("Plaintiff") for disability insurance benefits ("DIB") under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act").

Plaintiff established medically determinable and severe impairments of lumbar degenerative disc disease, lumbar radiculopathy, and post-laminectomy syndrome. During the relevant period, she underwent surgery on her spine and had a neurostimulator implanted in her spine. Plaintiff's treating provider opined that these impairments, along with other diagnoses, caused disabling functional impairments. No other medical opinion exists in the record; the administrative law

judge ("ALJ") did not order a records review or consultative examination from a state agency physician. The ALJ rejected Plaintiff's treating physician's opinion based on an impermissible independent lay review of the medical evidence. This violates Third Circuit precedent and deprives the ALJ's conclusion of substantial evidence. For the foregoing reasons, the Court will grant Plaintiff's appeal, vacate the decision of the Commissioner, and remand for further proceedings.

## II.    Procedural Background

On October 5, 2011, Plaintiff filed an application for DIB under the Social Security Act, 42 U.S.C. §§401-433, 1382-1383 (the "Act").   (Tr. 151-57). On November 8, 2011, the Bureau of Disability Determination denied this application (Tr. 76-92), and Plaintiff filed a request for a hearing on December 2, 2011.  (Tr. 91-92). On March 26, 2013, an ALJ held a hearing at which Plaintiff—who was represented by an attorney—and a vocational expert ("VE") appeared and testified. (Tr. 35-75).  On April 8, 2013, the ALJ found that Plaintiff was not disabled and not entitled to benefits. (Tr. 19-34). On April 29, 2013, Plaintiff filed a request for review with the Appeals Council (Tr. 16-18), which the Appeals Council denied on October 23, 2013, thereby affirming the decision of the ALJ as the "final decision" of the Commissioner. (Tr. 1-5).

On July 3, 2014, Plaintiff filed the above-captioned action pursuant to 42 U.S.C. § 405(g) to appeal the decision of the Commissioner. (Doc. 1). On

September 16, 2014, the Commissioner filed an answer and administrative transcript of proceedings. (Docs. 5, 6). On October 29, 2014, Plaintiff filed a brief in support of his appeal ("Pl. Brief"). (Doc. 7). On December 1, 2014, Defendant filed a brief in response ("Def. Brief"). (Doc. 8). On May 18, 2015, the parties consented to transfer of this case to the undersigned for adjudication. (Doc. 10, 11, 12). The matter is now ripe for review.

## II.     Standard of Review

When reviewing the denial of disability benefits, the Court must determine whether substantial evidence supports the denial. *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir. 1988). Substantial evidence is a deferential standard of review. *See Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004). Substantial evidence "does not mean a large or considerable amount of evidence, but rather 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (quoting *Consol. Edison Co. of New York v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). In other words, substantial evidence requires "more than a mere scintilla" but is "less than a preponderance." *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

## III.    Sequential Evaluation Process

To receive disability or supplemental security benefits, a claimant must demonstrate an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A). The Act requires that a claimant for disability benefits show that he has a physical or mental impairment of such a severity that:

> He is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step evaluation process to determine if a person is eligible for disability benefits. *See* 20 C.F.R. § 404.1520; *see also Plummer v. Apfel*, 186 F.3d 422, 428 (3d Cir. 1999). If the Commissioner finds that a Plaintiff is disabled or not disabled at any point in the sequence, review does not proceed. *See* 20 C.F.R. § 404.1520. The Commissioner must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment from 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing"); (4) whether the claimant's impairment prevents the

claimant from doing past relevant work; and (5) whether the claimant's impairment prevents the claimant from doing any other work. *See* 20 C.F.R. §§ 404.1520, 416.920. Before moving on to step four in this process, the ALJ must also determine Plaintiff's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e).

The disability determination involves shifting burdens of proof. The claimant bears the burden of proof at steps one through four. If the claimant satisfies this burden, then the Commissioner must show at step five that jobs exist in the national economy that a person with the claimant's abilities, age, education, and work experience can perform. *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993). The ultimate burden of proving disability within the meaning of the Act lies with the claimant. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.912(a).

## IV. Relevant Facts in the Record

Plaintiff was born on August 10, 1972, and was classified by the Regulations as a younger individual through the date of the ALJ decision. (Tr. 29). 20 C.F.R. § 404.1563. Plaintiff has at least a high school education and past relevant work as a medical assistant and deli manager. (Tr. 29). Plaintiff asserts disability as a result of back impairments. (Tr. 20-29). Plaintiff reported that the last time she worked was on February 1, 2009. (Tr. 183).

On October 31, 2011, Plaintiff's treating physician, Dr. Howard Farrington, M.D., authored a medical opinion. (Tr. 398). He opined that she could only stand or walk for one to two hours and could sit for less than six hours. (Tr. 390). The form specifically asked him whether she could sit for longer with a sit/stand option. (Tr. 390). He opined that she could never bend, stoop, or climb. (Tr. 391). He opined that she could never squat. (Tr. 397). He indicated that he had seen Plaintiff every two months since 2005. (Tr. 392). He opined that she had difficulties performed daily activities on a sustained basis. (Tr. 394). He noted that Plaintiff had treated with medications, physical therapy, rest, and heat. (Tr. 395). He identified multiple objective findings, including paravertebral muscle spasm, positive straight leg raise, decreased muscle strength at 4/5, and decreased range of motion in her cervical and lumbar spine. (Tr. 396). He opined that she needed a cane to ambulate when she had flare-ups of pain and that her ability to get on and off an examining table was poor. (Tr. 397).

On March 13, 2012, Dr. Farrington authored a letter that states:

[Plaintiff] has been a patient of mine for many years. During this time, she has suffered from lumbar back pain. She would have routine severe flare ups of pain and muscle spasms two to four times a year that would debilitate her for weeks at a time. Numerous regiments of muscle relaxers, narcotic pain medications and steroid tapers have helped relieve these situations, but [the] progressive nature of her pain and leg weakness even numbness further hindered her ability to work or care [for] herself. She has attempted several bouts of physical and occupational therapy to no avail.

She eventually required back surgery by her neurosurge[on]. Unfortunately, this surgical intervention afforded very little pain relief for [Plaintiff]. She was continued on muscle relaxers and pain medications in an attempt to lessen her pain and restore her functionality.

She has recently had an internal neurostimulator implanted to further relieve her pain. It is too early to determine if this modality will help. [Plaintiff] has been essential[ly] bed bound since October 2011 and remains this way. It is my professional opinion that she is unable to consider returning to work for the next year due to [the] extent of her medical problem and the time required to strengthen her to the level of a reliable and capable worker.

(Tr. 582).

On June 5, 2012, Dr. Farrington authored another medical opinion. (Tr. 635). He opined that Plaintiff could only sit for three hours in an eight-hour day, only stand/walk for two hours, and could not sit or stand/walk continuously in a work setting (Tr. 637-38). He indicated that Plaintiff symptoms would likely increase in the workplace. (Tr. 639-40).

No other medical opinion regarding Plaintiff's physical function appears in the record. Doc. 6.

Other medical evidence in the record shows that Plaintiff began complaining of back pain as early as November of 2007. (Tr. 272). At that time, lumbar spine MRI indicated a "[r]ight paracentral disc bulge, possibly early protrusion, L3-L4," a "[s]mall right paracentral disc protrusion L4-L5," and "[a]nular and focal disc

bulging L5-S1 with left neural foraminal narrowing." (Tr. 272). In August of 2008, lumbar spine X-rays indicated degenerative disc disease. (Tr. 280).

In September of 2008, Plaintiff underwent spinal surgery, specifically L4 5 micro-endoscopic decompression, performed by Dr. Joseph P. Krzeminski. (Tr. 330). Post-operative diagnosis was "[r]ight L4-5 herniated nucleus pulposus." (Tr. 331). On December 31, 2008, lumbar spine MRI indicated evidence of post-operative scarring, a "residual disc," and "[m]ultilevel degenerative changes with small disc protrusion at L3-4 and small to moderate disc protrusion at L4-5 level indenting the anterior thecal sac." (Tr. 334). Dr. Krzeminski released her to work without restriction in January of 2009. (Tr. 345).

However, on March 1, 2011, lumbar spine MRI indicated "[n]ew acute disc herniation right side at L5-S1. Stable facet degenerative changes at L5-S1. Neural foraminal stenosis at L5-S1 appears a little bit worse on the left side. Changes of degenerative disc disease at L5-S1 have progressed when compared with the prior exam…Stable small central disc herniation at L4-L5." (Tr. 293). On April 1, 2011, Plaintiff returned to Dr. Krzeminski with complaints of back pain. (Tr. 353). Examination indicated decreased lumbar spine range of motion. (Tr. 355). He ordered additional imaging studies. (Tr. 353). On May 19, 2011, he noted "a positive lumbar SPECT scan documenting disk abnormality. The patient will undergo lumbar diskography as a prelude towards further consideration." (Tr. 342).

On July 26, 2011, Plaintiff established care at Hillside Pain Management, P.C., for left sided lumbar pain, bilateral thoracic pain, left thigh pain, and toe pain. (Tr. 369). She explained she had this pain "since December 2010, she has a history of back pain that has been getting progressively worse, no injury involved." (Tr. 369). Examination indicated "marked tenderness" and decreased range of motion in her lumbar spine. (Tr. 372). She had decreased muscle strength in her right lower extremity and antalgic gait. (Tr. 372-73). Examination in August of 2011 indicated that she moderately overweight and in moderate distress. (Tr. 377). Examination indicated "marked tenderness," decreased range of motion in her lumbar spine, decreased muscle strength in her right lower extremity and antalgic gait. (Tr. 378-79). Discogram was notable for non-concordant pain. (Tr. 380). She had "lateral and posterior fissuring (periphery of annulus), degenerated disc, narrowed height." (Tr. 383). She received an injection and continued with prescriptions for Soma, Lortab, Lidoderm patches every 12 hours and Dilaudid. (Tr. 385). In October of 2011, examination indicated "marked tenderness," decreased range of motion in her lumbar spine, decreased muscle strength in her right lower extremity and antalgic gait. (Tr. 88-89).

On October 6, 2011, Plaintiff followed-up with Dr. Krzeminski, who noted she had "has a positive diskogram at L3-4 but also has leg discomfort from LS·S I. The patient will be set up for a spinal cord stimulator trial." (Tr. 340).

In January of 2012, Plaintiff had the spinal cord stimulator implanted by Dr. Krzeminski. (Tr. 593). At follow-up in February of 2012, she reported that it was "overall working for her" but the coverage was "not ideal." (Tr. 593). She continued taking Percocet "a couple of times a day daily." (Tr. 594). Examination indicated "significant tenderness" and a cautious gait." (Tr. 595). On February 21, 2012, Plaintiff reported she "continue[d] to have a lot of pain in the inferior aspect the incision on the left and right as well as of the right buttocks incision." (Tr. 597). She appeared "somewhat uncomfortable" and walked with a mildly antalgic gait. (Tr. 598). Dr. Krzeminski suggested she wean herself off narcotic pain medication. (Tr. 599). In March of 2012, he noted that she "require revision and repositioning of the battery" and explained "the risks and complications of surgery." (Tr. 600). Lumbar spine X-rays indicated no significant degenerative changes. (Tr. 581). Thoracic spine x-rays indicated mild degenerative changes. (Tr. 580). Dr. Farrington noted she was "still bed bound." (Tr. 618). In May of 2012, she reported "a shock like sensation with forward flexion." (Tr. 604). She reported she was "unable to even lean forward to brush her teeth." (Tr. 605).

In May of 2012, Dr. Farrington prescribed physical therapy. (Tr. 619). In June of 2012, he observed a swollen incision on her right hip. (Tr. 620). He restarted her prescriptions for hydromorphone, soma, and Lortab after examination

indicated decreased range of motion, swelling, tenderness, and a positive straight leg raise. (Tr. 623).

In September of 2012, Dr. Krzeminski noted "increasing back pain," that Plaintiff "had increased discomfort with physical therapy," and planned for "similar diagnostic studies to . . . identify the pain generator most likely at L5-S 1." (Tr. 608). Examination showed decreased lumbar spine range of motion. (Tr. 610). She continued reporting discomfort through November of 2012. (Tr. 612-13).

In October of 2012, Dr. Farrington noted decreased range of motion, tenderness, and pain in her legs. (Tr. 628). He continued Soma and Lortab and prescribed a prednisone taper. (Tr. 628). In November of 2012, he noted that facet block or fusion surgery might be necessary. (Tr. 629). A bone SPECT study indicated "mild increased uptake in the right aspect of the L5-S1 interspace consistent with discogenic disease and degenerative spondylytic change." (Tr. 634).

On March 26, 2013, Plaintiff appeared and testified at a hearing before the ALJ. (Tr. 48). She testified that she "wake[s] up in the morning and go[es] from [her] bed to [her] sofa, and that's where [she] spend[s] all day." (Tr. 48). She explained that she remained in bed with a heating pad after she woke up, but had a goal to be dressed by noon each day. (Tr. 54). She testified that she had to take breaks while getting dressed, and once she was done, would lay flat on her sofa

with a heating pad. (Tr. 54). She testified that she had been prescribed a back brace that she wore on her lumbar spine. (Tr. 51). She testified that she had taken narcotic pain medication in accordance with the prescription of her providers. (Tr. 51-52). She testified to constant, aching pain. (Tr. 52). She testified that she stopped physical therapy in accordance with Dr. Farrington's instructions after it aggravated her pain. (Tr. 56). The ALJ emphasized that Plaintiff did not submit a medical opinion from Dr. Krzeminski. (Tr. 60).

The ALJ issued the decision on April 8, 2013. (Tr. 30). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 1, 2008, the alleged onset date. (Tr. 24). At step two, the ALJ found that Plaintiff's lumbar degenerative disc disease, lumbar radiculopathy and post-laminectomy syndrome were medically determinable and severe. (Tr. 24). At step three, the ALJ found that Plaintiff did not meet or equal a Listing. (Tr. 25). The ALJ found that Plaintiff had the RFC to:

> [P]erform light work as defined in 20 CFR 404.1567(b) subject to the following limitations: the claimant must have normal breaks (as defined by the vocational expert.), must sit/stand at option (defined as occupations that can be performed, either sitting or standing, at the option of the claimant, without significant loss of productivity); with the right lower extremity avoid working with foot/leg pedals or levers; no limitations with regard to pressing a button or knob; can occasionally climb stairs; must avoid climbing ropes, ladders, scaffolding or poles; occasional stooping (bending to the waist); can occasionally kneel, crouch or squat; avoid crawling on hands, knees or feet; no operation of a motor vehicle as part of the work; reaching overhead bilaterally is limited to occasionally; avoid concentrated

exposure to extreme cold, wet/water/liquids or extreme heat; avoid working around or with hazardous machinery, in high exposed places, around fast moving, large machinery on the ground; avoid working around or with sharp objects; around or with toxic chemicals; avoid working with large vibrating objects or surfaces with all four extremities.

(Tr. 17). At step four, the ALJ found that Plaintiff could not perform his past relevant work. (Tr. 29). At step five, the ALJ found that Plaintiff could perform other work in the national economy. (Tr. 29). Consequently, the ALJ determined that Plaintiff was not disabled within the meaning of the Act and not entitled to benefits. (Tr. 30).

## V.     Plaintiff Allegations of Error

### A. Evaluation of Treating Source Opinion

Plaintiff asserts that the ALJ's RFC assessment is not supported by any medical opinion and the ALJ impermissibly rejected her treating physician opinion based on speculative inferences from the medical reports. (Pl. Brief at 14-15) (citing *Doak v. Heckler,* 790 F.2d 26 (3d Cir.1986); *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000)). Defendant responds that the Regulations place the duty of crafting an RFC on the ALJ. (Def. Brief at 14-17).

Courts in this District acknowledge that the ALJ has the duty to evaluate opinion evidence and craft an RFC. However, the ALJ may not reject an uncontradicted medical opinion on the basis of lay interpretation of medical evidence. The ALJ has no medical training and is not qualified to independently

interpret the medical evidence to supplant the opinion of a competent medical professional. As the Third Circuit explained in *Doak v. Heckler,* 790 F.2d 26 (3d Cir.1986), "[n]o physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence."). *Id.* at 29. *See also Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985) ("By independently reviewing and interpreting the laboratory reports, the ALJ impermissibly substituted his own judgment for that of a physician; an ALJ is not free to set his own expertise against that of a physician who presents competent evidence. Again, if the ALJ believed that Dr. Scott's reports were conclusory or unclear, it was incumbent upon the ALJ to secure additional evidence from another physician."); *Morales v. Apfel*, 225 F.3d 310, 317-18 (3d Cir. 2000) ("[A]n ALJ may not make "speculative inferences from medical reports" and may reject "a treating physician's opinion outright only on the basis of contradictory medical evidence" and not due to his or her own credibility judgments, speculation or lay opinion.") (internal citations omitted). The Court explained in *Morales* that:

> Dr. Erro's observations that Morales is "stable and well controlled with medication" during treatment does not support the medical conclusion that Morales can return to work. Dr. Erro, despite his notation, opined that Morales's mental impairment rendered him markedly limited in a number of relevant work-related activities. Other information in the treatment records supports this opinion. Thus, Dr. Erro's opinion that Morales's ability to function is seriously impaired or nonexistent in every area related to work shall not be

supplanted by an inference gleaned from treatment records reporting on the claimant in an environment absent of the stresses that accompany the work setting.

*Id.* at 319.

As Judge Brann explained in *Kester v. Colvin*, 3:13-CV-02331, 2015 WL 1932157 (M.D. Pa. Apr. 21, 2015):

> The Commissioner argues that…an ALJ need not base a Residual Functional Capacity ("RFC") determination on a medical opinion. The RFC, according to the Commissioner, is strictly a determination for the Commissioner. *Brown v. Astrue,* 649 F.3d 193, 197 n. 2 (3d Cir.2011); 20 C.F.R. § 416.927(d)(2). As a result, the ALJ is not bound by the medical opinions provided by Plaintiff's treating physicians and the state agency medical consultant. *Chandler v. Comm'r of Soc. Sec.* 667 F.3d 356, 361 (3d Cir.2011). The Commissioner further argues that substantial evidence supported the ALJ's determination as she examined Plaintiff's record longitudinally before coming to the correct RFC assessment.

> … The Commissioner is correct in stating that the RFC assessment must be based on consideration of all the evidence in the record, including the testimony of the claimant regarding his activities of daily living, medical records, lay evidence and evidence of pain. *See Burnett v. Comm'r of Soc. Sec. Admin.,* 220 F.3d 112, 121–22 (3d Cir.2002); *see also* 20 C.F.R. § 404.1545(a). The Commissioner is likewise correct in arguing that the ALJ has the sole responsibility to determine a claimant's RFC. *See generally,* SSR 96–5P, 1996 WL 374183 (July 2, 1996). However, '[r]arely can a decision be made regarding a claimant's [RFC] without an assessment from a physician regarding the functional abilities of the claimant.' *Gormont v. Astrue,* Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D.Pa. Mar. 4, 2013) (Nealon, J). An ALJ is not a medical professional and cannot make medical conclusions in lieu of a physician.

> As two commentators have explained:

Sometimes administrative law judges assert that they-and not physicians-have the right to make residual functional capacity determinations. In fact, it can reasonably be asserted that the ALJ has the right to determine whether a claimant can engage in sedentary, light, medium, or heavy work. The ALJ should not assume that physicians know the Social Security Administration's definitions of those terms. Even though the RFC assessment draws from medical sources for support, it is ultimately an administrative determination based on those administrative definitions and is reserved to the Commissioner. *However, the underlying determination is a medical determination, i.e., that the claimant can lift five, 20, 50, or 100 pounds, and can stand for 30 minutes, two hours, six hours, or eight hours. That determination must be made by a doctor. Once the doctor has determined how long the claimant can sit, stand or walk, and how much weight the claimant can lift and carry, then the ALJ, with the aid of a vocational expert if necessary, can translate that medical determination into a residual functional capacity determination.* Of course, in such a situation a residual functional capacity determination is merely a mechanical determination, because the regulations clearly and explicitly define the various types of work that can be performed by claimants, based upon their physical capacities.

Carolyn A. Kubitschek & Jon C. Dubin, Social Security Disability Law and Procedure in Federal Courts, 344–345 (2014) (emphasis added).

Moreover, federal courts have repeatedly held that the ALJ cannot speculate as to a claimant's RFC. The ALJ must support any functional capabilities conclusions by invoking medical evidence in the record. *See e.g. Woodford v. Apfel,* 93 F.Supp.2d 521, 529 (S.D.N.Y.2000) ("An ALJ commits legal error when he makes a residual functional capacity determination based on medical reports that do not specifically explain the scope of claimant's work-related capabilities."); *Zorilla v. Chater,* 915 F.Supp. 662, 667 (S.D.N.Y.1996) ( "The lay evaluation of an ALJ is not sufficient

evidence of the claimant's work capacity; an explanation of the claimant's functional capacity from a doctor is required."); *see also, Yanchick v. Astrue,* Civil No. 10–1654, slip op. at 17–19 (M.D.Pa. Apr. 27, 2011) (Muir, J.) (Doc. 11); *Coyne v. Astrue,* Civil No. 10–1203, slip op. at 8–9 (M.D. Pa. June 7, 2011) (Muir, J.) (Doc. 21); *Crayton v. Astrue,* Civil No. 10–1265, slip op. at 38–39 (M.D.Pa. Sept. 27, 2011) (Caputo, J.) (Doc. 17); *Dutton v. Astrue,* Civil No. 10–2594, slip op. at 37–39(M.D.Pa. Jan. 31, 2012) (Munley, J.) (Doc. 14); *Gunder v. Astrue,* Civil No. 11–300, slip op. at 44–46 (M.D.Pa. Feb. 15, 2012) (Conaboy, J.) (Doc. 10); *Ames v. Astrue,* Civil No. 3:11–CV–1775, slip op. at 55–58 (M.D.Pa. Feb. 4, 2013).

Accordingly, the United States Court of Appeal for the Third Circuit has found remand to be appropriate where the ALJ's RFC finding was not supported by a medical assessment of any doctor in the record. *See Doak v. Heckler,* 790 F.2d 26, 29 (3d Cir.1986) (directing remand because the ALJ's conclusion that the claimant had the RFC to perform light work was not supported by substantial evidence in light of the fact that no physician in the record had suggested that the claimant could perform light work while others had reached different conclusions.)

*Id.* at *2-3. *See also* Bloomer v. Colvin, 3:13-CV-00862, 2014 WL 4105272, at *6 (M.D. Pa. Aug. 19, 2014) (Jones, J.); ("The ALJ did not cite to a single medical opinion that contradicted [the treating source] opinion; thus, the ALJ improperly set his "own expertise against that of a physician who present[ed] competent medical evidence.' Consequently, the ALJ's residual functional capacity determination is not supported by substantial evidence.") (quoting *Plummer v. Apfel*, 186 F.3d 422, 429 (2d Cir.1999)). Generally, an ALJ may not reject all of the medical opinions in the record and assess an RFC that is greater than found by the medical professionals. *See Gormont v. Astrue*, 3:11-CV-02145, 2013 WL

791455, at *7 (M.D. Pa. Mar. 4, 2013) (Nealon, J.); *see also Bloomer v. Colvin*, 3:13-CV-00862, 2014 WL 4105272, at *5 (M.D. Pa. Aug. 19, 2014) (Jones, J.); *House v. Colvin*, 3:12-CV-02358, 2014 WL 3866072, at *8 (M.D. Pa. Aug. 6, 2014) (Kane, J.); *Muhaw v. Colvin*, CIV.A. 3:12-2214, 2014 WL 3743345, at *15 (M.D. Pa. July 30, 2014) (Mannion, J.). *Maellaro v. Colvin*, 3:12-CV-01560, 2014 WL 2770717, at *11 (M.D. Pa. June 18, 2014) (Mariani, J.); *Arnold v. Colvin*, 3:12-CV-02417, 2014 WL 940205, at *4 (M.D. Pa. Mar. 11, 2014) (Brann, J.); *Kaumans v. Astrue*, 3:11-CV-01404, 2012 WL 5864436, at *12 (M.D. Pa. Nov. 19, 2012) (Caputo, J.); *Troshak v. Astrue*, 4:11-CV-00872, 2012 WL 4472024, at *7-8 (M.D. Pa. Sept. 26, 2012) (Munley, J.); *Shedden v. Astrue*, 4:10-CV-2515, 2012 WL 760632, at *11 (M.D. Pa. Mar. 7, 2012) (Rambo, J.); *Duvall-Duncan v. Colvin*, 1:14-CV-17, 2015 WL 1201397, at *11 (M.D. Pa. Mar. 16, 2015) (Conner, C.J.); *McKean v. Colvin*, 1:13-CV-2585, 2015 WL 1201388, at *8 (M.D. Pa. Mar. 16, 2015) (Conner, C.J.); *Hawk v. Colvin*, 1:14-CV-337, 2015 WL 1198087, at *12 (M.D. Pa. Mar. 16, 2015) (Conner, C.J.).

Here, the ALJ assessed an RFC with greater capabilities than expressed in any of Dr. Farrington's opinions, as he opined that she could not sit, stand, or walk for long enough to perform even sedentary work and could never bend, stoop, or climb. (Tr. 390-91). Thus, like *Doak*, "[n]o physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the

regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence." *Doak v. Heckler,* 790 F.2d 26 (3d Cir.1986), *Id.* at 29. Moreover, "[b]y independently reviewing and interpreting" the medical evidence, "the ALJ impermissibly substituted his own judgment for that of a physician." *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). The ALJ "set [her] own expertise against that of a physician who presents competent evidence" and "it was incumbent upon the ALJ to secure additional evidence from another physician." *Id.*

The ALJ made numerous other errors. The ALJ wrongly emphasized that Plaintiff did not submit a medical opinion from Dr. Krzeminski. (Tr. 60). A physician's "silen[ce] on the issue of [a claimant's] physical limitations" does not constitute "affirmative evidence  that the…. physician considered Allen to have no …restrictions." *Allen v. Bowen*, 881 F.2d 37, 41-42 (3d Cir. 1989). The ALJ erred in concluding that Plaintiff underwent conservative treatment. (Tr. 27).   Dr. Farrington described her treatment as "[n]umerous regiments of muscle relaxers, narcotic pain medications and steroid tapers…several bouts of physical and occupational therapy to no avail…eventually required back surgery by her neurosurge[on]…[which] afforded very little pain relief for [Plaintiff]. She was continued on muscle relaxers and pain medications…[and] recently had an internal neurostimulator implanted to further relieve her pain." (Tr. 582). *See Sykes v. Apfel*, 228 F.3d 259, 274 n. 9 (3d Cir. 2000); Shields v. Astrue, 3:CV-07-417, 2008

WL 4186951, at *11 (M.D. Pa. Sept. 8, 2008) (ALJ erred in concluding that claimant's treatment was conservative when claimant "received ongoing and protracted treatment for her pain, including several sessions of acupuncture, an unsuccessful spinal injection, and increasingly strong pain medication."). The ALJ also erred in failing to consider Plaintiff's explanation for discontinuing physical therapy. (Tr. 27). SSR 96-7p.

The ALJ erred in concluding that Dr. Farrington did not consider a sit/stand option. The form specifically asked him whether she could sit for longer with a sit/stand option. (Tr. 390). The ALJ erred in relying on Dr. Farrington's notation that it was "too early to determine" if the neurostimulator would resolve her pain because he also opined that she was "unable to consider returning to work for the next year due to [the] extent of her medical problem and the time required to strengthen her to the level of a reliable and capable worker." (Tr. 582).

The Court remands for the ALJ to properly evaluate the medical opinions. On remand, the ALJ may not supplant Plaintiff's treating physician opinions with her own lay interpretation. She has no medical training. Because the Court recommends remand on these grounds, the Court declines to address Plaintiff's other allegations of error. A remand may produce different results on these claims, making discussion of them moot. *See LaSalle v. Comm'r of Soc. Sec.*, No. CIV.A. 10-1096, 2011 WL 1456166, at *7 (W.D. Pa. Apr. 14, 2011).

## VII.    Conclusion

The Court finds that the ALJ's decision lacks substantial evidence because the ALJ failed to properly evaluate the medical opinions. Pursuant to 42 U.S.C. § 405(g), the decision of the Commissioner is vacated, and this case is remanded for further proceedings.

An appropriate Order in accordance with this Memorandum will follow.

Dated: September 30, 2015                         _____s/ Gerald B. Cohn_____
                                                          GERALD B. COHN
                                                  UNITED STATES MAGISTRATE JUDGE